UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TERRY LYNN KATT,

                Petitioner,

v.                                                                CASE NO. 04-CV-60187-AA
                                                                  HONORABLE MARIANNE O. BATTANI

BLAINE LAFLER,

                Respondent.

_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Terry Lynn Katt has filed a *pro se* application for the writ of habeas corpus

under 28 U.S.C. § 2254.  Respondent opposes the habeas petition on the grounds that two of

Petitioner's claims are not cognizable on habeas review and the state court's adjudication of the

remaining claim was reasonable.  The Court has concluded that Petitioner's claims lack merit.

Accordingly, the habeas petition will be denied.

### I.  Background

### A. State Court Proceedings

Petitioner was charged in Berrien County, Michigan with four counts of first-degree

criminal sexual conduct.  *See* MICH. COMP. LAWS § 750.520b(1)(a) (sexual penetration of a

victim under thirteen years of age).  On June 3, 1999, a Berrien County Circuit Court jury

acquitted Petitioner of one count, but found him guilty of the other three counts of first-degree

criminal sexual conduct.  The convictions arose from allegations that, in 1998, Petitioner

engaged in sexual acts with a five-year-old girl (A.D.) and her seven-year-old brother (D.D.).[1]

Petitioner was a boarder in the house where the children lived with their mother, their mother's

ex-husband, their uncle, and another man.  The children testified at trial

> by way of closed circuit television. . . .  Six years old at the time of trial, A.D.
> testified about sexual abuse at defendant's hands.  Specifically, she indicated that
> "Terry put his dick" in her "coo-coo."  A.D. further testified that defendant would
> take her and D.D. into his bedroom when it was dark outside, and take off
> their clothes.  A.D. also testified that defendant "put [his] dick in [her] butt."
> Using anatomically correct dolls, A.D. also described incidents where defendant
> would "hunch" over her, moving his body back and forth.  Using the dolls, A.D.
> also indicated that defendant would put his fingers in her vaginal area.  D.D.,
> seven years old at the time of trial, was more reticent during testimony, indicating
> that he was frightened of defendant.  However, he also testified that defendant
> would wake the children up and take them into his bedroom at night and remove
> their clothes.  D.D. also used anatomically correct dolls while testifying.
> According to D.D., defendant put his finger in both D.D.'s and A.D.'s bottom,
> and would put his penis in D.D.'s mouth, and would also put D.D's penis in his
> mouth.

See People v. Katt, 248 Mich. App. 282, 298 n.13; 639 N.W.2d 815, 824 n.13 (2001).

Petitioner denied doing these things.  His defense was that the complainants' mother

influenced the children to falsely accuse him because he had informed the mother's ex-husband,

to whom she was engaged, that she was having an affair with another man in the household.  The

jury apparently did not believe Petitioner, for they convicted him of three of the four counts of

first-degree criminal sexual conduct.

The trial court sentenced Petitioner as a habitual offender, second offense, to three

concurrent terms of life imprisonment.  On appeal from his conviction, Petitioner alleged that (1)

the trial court erred in admitting a social worker's hearsay testimony, (2) the trial court deprived

---

[1]  Both the Michigan Court of Appeals and the Michigan Supreme Court referred to the
complainants by their initials.  For the sake of consistency and to protect the complainants'
identity, this Court also will refer to the complainants by their initials.

him of a fair trial by refusing defense counsel's request for a supplemental instruction reiterating

the burden of proof, (3) the trial court erred by admitting rebuttal evidence that Petitioner had

been charged in another criminal case with touching a boy's penis, and (4) the sentence violated

Petitioner's right to due process and his right not to be placed in double jeopardy.  The Michigan

Court of Appeals affirmed Petitioner's convictions in a published opinion, but remanded his case

because the judgment of sentence incorrectly stated that Petitioner had been sentenced to four

life sentences.  *See id.*, 248 Mich. App. at 311-12; 639 N.W.2d at 830.

Petitioner raised the first three claims enumerated above in the Michigan Supreme Court,

which granted leave to appeal the hearsay issue.  *See People v. Katt*, 466 Mich. 889; 649 N.W.2d

72 (2002) (table).  On May 30, 2003, a majority of the Michigan Supreme Court affirmed the

decision of the court of appeals after concluding that the trial court did not abuse its discretion by

admitting the social worker's testimony.  *See People v. Katt*, 468 Mich. 272; 662 N.W.2d 12

(2003).[2]

## B.  Federal Court Proceedings

Petitioner signed and dated his habeas petition on August 25, 2004.  The grounds for

relief allege that (1) the trial judge committed reversible error by admitting the social worker's

testimony under Michigan Rule of Evidence 803(24), (2) the trial court erred in denying defense

counsel's request to re-read the jury instruction on the burden of proof, (3) the trial court erred

by admitting rebuttal evidence that Petitioner was charged with sexual assault in 1997, and (4)

---

[2] Justices Robert P. Young, Jr., Michael F. Cavanagh, and Clifford W. Taylor dissented. They determined that the trial court erred in allowing the hearsay evidence to be admitted in evidence and that the error was not harmless because the children's testimony  was somewhat vague and inconsistent and the physical examination of the children was inconclusive.

defense counsel was ineffective for failing to produce two witnesses.

Respondent moved to dismiss the habeas petition because Petitioner had not exhausted state remedies for his fourth claim (ineffective assistance of counsel).  Petitioner conceded in a reply to Respondent's motion that he did not raise his fourth claim on appeal.  The Court dismissed the fourth claim and denied Respondent's motion, because Petitioner asked the Court to adjudicate his first three claims if the Court found that he did not exhaust state remedies for his fourth claim.  Respondent recently filed an answer to the habeas petition, and the case is now ready to be adjudicated.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  "Avoiding

these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even

require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of

the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*

opinion) (emphasis in original).

> Furthermore, state findings of fact are presumed to be correct unless the defendant
> can rebut the presumption by clear and convincing evidence. 28 U.S.C. §
> 2254(e)(1). Finally, review is conducted in light of the law as it existed at the
> time of the final state court decision, *Teague v. Lane,* 489 U.S. 288 (1989), unless
> an intervening constitutional decision announces a "watershed" rule of criminal
> law with implications for the fundamental fairness of the trial proceeding.
> *Caspari v. Bohlen,* 510 U.S. 383, 396 (1994).

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### III. Discussion

### A. Hearsay

A children's protective services worker named Angela Bowman testified at trial that,

according to D.D., Petitioner sexually penetrated him and his sister. Petitioner alleges that the

trial court erred in admitting Ms. Bowman's testimony because it was hearsay. Petitioner

maintains that the applicable exception to the hearsay rule was Michigan Rule of Evidence 803A

(the tender-years exception),[3] but because the prosecutor was unable to satisfy the requirements

---

[3] Michigan Rule of Evidence 803A reads in pertinent part:

A statement describing an incident that included a sexual act performed with or
on the declarant by the defendant or an accomplice is admissible to the extent that
it corroborates testimony given by the declarant during the same proceeding,
provided:

(1) the declarant was under the age of ten when the statement was made;

(2) the statement is shown to have been spontaneous and without indication of
manufacture;

of Rule 803A, the testimony was inadmissible.

## 1. The State Court Decisions

Ms. Bowman testified at a pretrial evidentiary hearing about D.D.'s statements to her at an interview on October 27, 1998.  The prosecutor conceded at the hearing that Ms. Bowman's hearsay testimony was not admissible under the tender-years exception to the hearsay rule, because D.D.'s statements to Ms. Bowman were not the first corroborative statements about the incidents with Petitioner.  D.D. apparently told his mother about the alleged abuse before he informed Ms. Bowman about the abuse.  The prosecutor, nevertheless, argued that the evidence was admissible under Michigan Rule of Evidence 803(24), which is the residual or "catch-all" exception to the hearsay rule.  (Tr. May 13, 1999, at 89-139.)

The trial court ruled that the proffered testimony was admissible under Rule 803(24) and that the requirements of Rule 803(24) were satisfied because the evidence was trustworthy and more probative than other evidence.  The following factors led the trial court to conclude that the hearsay bore indicia of trustworthiness:  (1) the statements to Ms. Bowman were spontaneous, (2) D. D. spoke from personal knowledge, (3) Ms. Bowman was a skilled questioner, who avoided leading questions and established a rapport that led to accurate statements, (4) D. D. had no motive to fabricate the statements, (5) there was no evidence that D.D. falsified his

---

(3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant.

If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.

statements, (6) Ms. Bowman had no preconceived notion that sexual activity had occurred,[4] and

(7) the statements to Ms. Bowman provided the most trustworthy statement by D.D. of what

happened.  The trial court also noted, in light of Petitioner's defense, that D.D.'s statements to

Ms. Bowman were made early in the history of the case and formed the basis for the criminal

investigation, which resulted in the charges against Petitioner.  The court stated that proffered

testimony was more probative than other evidence that the prosecutor could provide because it

was detailed.  The court concluded that Ms. Bowman's testimony was admissible under

Michigan Rule of Evidence 803(24) because the proffered hearsay met all the criteria for the

evidentiary rule.  (Tr. May 26, 1999, at 4-13.)

The Michigan Court of Appeals reviewed Petitioner's claim and concluded that the trial

court did not abuse its discretion by admitting the evidence.  The court of appeals adopted the

position taken by the majority of federal courts and held that

> where a hearsay statement is inadmissible under one of the established exceptions
> to the hearsay rule, it is not automatically removed from consideration under
> [Michigan Rule of Evidence] 803(24).  Rather, where the trial court concludes
> that the statement possesses the requisite 'particularized guarantee[s] of
> trustworthiness, and otherwise meets the requirements of [Michigan Rule of
> Evidence] 803(24), it may properly admit the statement into evidence, in spite of
> its inability to meet the requirements of another firmly rooted exception to the
> hearsay rule.

*Katt*, 248 Mich. App. at 294; 639 N.W.2d at 821 (internal citation omitted).[5]  The Michigan

---

[4]  The statements occurred during an interview about allegations that the children's
mother physically abused the children.

[5]  The United States Court of Appeals for the Sixth Circuit also has held that, where a
statement does not satisfy the requirements of an established exception to the hearsay rule, it
may be considered for admission under the residual hearsay exception.  *See United States v.
Laster*, 258 F.3d 525, 530 (6th Cir. 2001).

Supreme Court likewise concluded that the trial court properly admitted D.D.'s statements to

Ms. Bowman under Rule 803(24), even though the statements did not qualify for admission

under Rule 803A, and that all the elements of Rule 803(24) were satisfied.  *Katt*, 468 Mich. at

296-97; 662 N.W.2d at 26.

## 2.  The State Evidentiary Issue

Petitioner has not alleged a violation of his federal constitutional right to confront

witnesses,[6] and "this Court 'must defer to a state court's interpretation of its own rules of

evidence and procedure' when assessing a habeas petition."  *Miskel v. Karnes*, 397 F.3d 446, 453

(6th Cir. 2005).  "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990).  "Trial court errors in state procedure and/or evidentiary law

do not rise to the level of federal constitutional claims warranting relief in a habeas action unless

the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due

process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.) (citing

*Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)), *cert. denied*, 543 U.S. 892 (2004).

The admission of Ms. Bowman's testimony was not fundamentally unfair because, as the

Michigan Court of Appeals explained,

> D.D. voluntarily and spontaneously told Bowman about the sexual abuse.
> Notably, Bowman was present at D.D.'s school to question him about alleged
> physical abuse by his mother, and was only apprised of the sexual abuse when
> D.D. volunteered the information.  Moreover, throughout his conversation with
> Bowman, D.D.'s recitation of the relevant facts concerning the sexual abuse

---

[6] Petitioner also did not assert a violation of his right to confront witnesses in the
Michigan Court of Appeals.  *Katt*, 248 Mich. App. at 295 n.10; 639 N.W.2d at 822 n.10.
Petitioner made a brief reference to *Idaho v. Wright*, 497 U.S. 805 (1990), his brief before the
Michigan Supreme Court, but both he and the state supreme court treated the claim as a state
evidentiary issue.

remained consistent.  D.D. also had personal knowledge of the sexual abuse of
both himself and A.D. because he was present when it occurred.  Bowman further
stated that D.D. freely recounted the circumstances of the abuse without coaxing
or leading questions on her part, and that he frequently used terminology
"unexpected of a child of similar age."  Likewise, Bowman indicated that she is
trained and proficient in interviewing suspected victims of child abuse and used
open-ended, nonleading questions to glean information from D.D.  Finally, as the
trial court correctly observed, there is absolutely no indication in the record that
substantiates defendant's claim that seven-year-old D.D. had a motive to fabricate
defendant's involvement in these heinous offenses.  Additionally, both D.D. and
his sister A.D. testified at trial and were subject to extensive cross-examination by
defense counsel.

*Katt*, 248 Mich. App. at 297-98; 639 N.W.2d at 823-24 (internal citations omitted).
Furthermore, "[b]ecause there is nothing in the record to indicate that the children's alleged

statements to their mother were as detailed or contained the same indicia of reliability . . . ,

D.D.'s statement was more probative than the testimony of the children's mother concerning

defendant's involvement in the sexual abuse."  *Id*., 248 Mich. App. at 300; 639 N.W.2d at 824.

This Court concludes for all the reasons given by the state court that the admission of Ms.

Bowman's testimony concerning D.D.'s statements to her did not violate Petitioner's right to due

process.  Therefore, Petitioner's evidentiary claim is not cognizable on habeas review.  *Stuart v.

Wilson*, 442 F.3d 506, 513 n.3 (6th Cir. 2006) ("Only errors of state law that result in a denial of

fundamental fairness in violation of due process are cognizable in federal habeas corpus

proceedings.").

### 3.  Constitutional Analysis

"The Sixth Amendment guarantees to a criminal defendant the right 'to be confronted

with the witnesses against him.'  U.S. Const. amend. VI."  *Danner v. Motley*, __ F.3d __, __, No.

04-5363, 2006 WL 1275521, at *4 (6th Cir. May 11, 2006).  Petitioner was able to confront Ms.

Bowman and the two complainants at trial, because all three witnesses testified and were subject

9

to cross-examination. Although "the mere physical presence of a child victim on the witness

stand does not necessarily eliminate Confrontation Clause concerns," *Bugh v. Mitchell*, 329 F.3d

496, 509 (6th Cir. 2003), *cert. denied*, 543 U.S. 892 (2004), hearsay statements are admissible if

they "bear[] adequate 'indicia of reliability.'" *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).[7]

Reliability can be inferred when "the evidence falls within a firmly rooted hearsay exception" or

bears "particularized guarantees of trustworthiness." *Id.*

A state's residual hearsay exception is not a firmly rooted hearsay exception for purposes

of the Confrontation Clause. *Idaho v. Wright*, 497 U.S. 805, 817-18 (1990). The remaining

question is whether D.D.'s statements to Ms. Bowman bore particularized guarantees of

trustworthiness.

"'[P]articularized guarantees of trustworthiness' must be shown from the totality of the

circumstances," including "those that surround the making of the statement and that render the

declarant particularly worthy of belief." *Id.* at 819. "[I]f the declarant's truthfulness is so clear

from the surrounding circumstances that the test of cross-examination would be of marginal

utility, then the hearsay rule does not bar admission of the statement at trial." *Id.* at 820.

D.D.'s statements to Ms. Bowman bore indicia of reliability for the reasons given by the

state court. Briefly stated "[t]he spontaneity of the interview, lack of motive to lie, and Ms.

---

[7] *Roberts* has been abrogated in part by *Crawford v. Washington*, 541 U.S. 36 (2004). *Crawford*, however, was decided after Petitioner's conviction became final, and it does not apply retroactively on habeas review. *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005), *cert. denied*, __ S. Ct. __, 2006 WL 558428 (2006). Furthermore, D.D.'s statements to Ms. Bowman were nontestimonial, and the *Roberts* "line of cases continues to control as to nontestimonial statements." *United States v. Johnson*, 440 F.3d 832, 844 (6th Cir. 2006) (citing *United States v. Franklin*, 415 F.3d 537, 546 (6th Cir. 2005)), *petition for cert. filed*, (U.S. Mar. 20, 2006) (No. 05-10617).

Bowman's interviewing methods combine[d] to give the statement circumstantial guarantees of

trustworthiness equivalent to the categorical [hearsay] exceptions" of Michigan Rule of

Evidence 803. *Katt*, 468 Mich. at 296; 662 N.W.2d at 26. "No investigation had begun when

the statement was made, and no one knew that Ms. Bowman was to interview DD that day.

Additionally, DD spoke from firsthand knowledge and in terms appropriate for a child of his

age." *Id.*, 468 Mich. at 295; 662 N.W.2d at 25.

The Court concludes that, even if Petitioner's claim were construed to allege the denial of

his right to confront witnesses, admission of the disputed evidence did not violate the

Constitution. The evidence bore particularized guarantees of trustworthiness and adequate

indicia of reliability. Thus, the state courts' conclusions did not result in decisions that were

contrary to, or unreasonable applications of, clearly established federal law as determined by the

Supreme Court.

### B. The Jury Instructions

Petitioner alleges next that the trial court deprived him of a fair trial with a properly

instructed jury when the court refused his request for a supplemental jury instruction reiterating

the burden of proof. This claim arose when the deliberating jurors sent a note to the trial court,

saying, "Some are undecided and unwilling to go either way due to lack of evidence on both

parts. Should majority rule or what is our next step." (Tr. June 3, 1999, at 667.)

The trial court showed the note to the parties and informed them that he intended to read

the standard deadlocked-jury instruction and to reiterate that the verdict must be unanimous.

Defense counsel had no objection to the trial court's proposal, but he was concerned that the

jurors' comment about the "lack of evidence on both parts" reflected a misunderstanding about

the burden of proof.  Consequently, he asked the trial court to re-read the jury instruction about

defendants not being required to produce any proof of innocence.  The trial court denied defense

counsel's request because it interpreted the jurors' note to say that the jurors were unable to

reach a unanimous verdict.  The court agreed to respond to the jury if they asked any future

questions about the burden of proof.  The jury then entered the courtroom, and the trial court

read the deadlocked-jury instruction to the jurors.  The trial court also explained to the jurors that

their verdict must be unanimous. (Tr. June 3, 1999, at 668-72.)

The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and

concluded that the trial court correctly interpreted the jurors' note as a specific request for

guidance because the jurors could not reach a unanimous verdict.  The court of appeals

concluded that the jury instructions sufficiently protected Petitioner's rights.

### 1.  Federal Habeas Review of Jury Instructions

The question on habeas review of jury instructions is not whether the instructions were

"undesirable, erroneous, or even 'universally condemned,'"  but whether "the ailing instruction

by itself so infected the entire trial that the resulting conviction violates due process."  *Cupp v.*

*Naughten*, 414 U.S. 141, 146-47 (1973).  The Supreme Court "has defined the category of

infractions that violate fundamental fairness very narrowly."  *Byrd v. Collins*, 209 F.3d 486, 527

(6th Cir. 2000) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quotations marks

omitted)).

Furthermore "[a]n omission, or an incomplete instruction, is less likely to be prejudicial

than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  Of course, "[a]

charge should not be misleading," and "[a] conviction ought not to rest on an equivocal direction

12

to the jury on a basic issue." *Bollenbach v. United States*, 326 U.S. 607, 614, 613 (1946). "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Id*. at 612-13.

"As a general rule, the necessity, extent and character of additional instructions are matters within the sound discretion of the trial judge." *United States v. Miller*, 546 F.2d 320, 324 (9th Cir. 1976). A trial "court's refusal to deliver a requested jury instruction "is reversible only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991) (citing *United States v. Parrish*, 736 F.2d 152, 156 (5th Cir. 1984)).

## 2. Application

The trial court and the Michigan Court of Appeals interpreted the jurors' note to mean that they could not reach a unanimous decision and did not know how to proceed. The state courts' findings of fact are entitled to a presumption of correctness because Petitioner has not rebutted them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Although the phrase "lack of evidence on both parts" expressed some ambiguity, the factfinder's choice between two permissible views of the evidence cannot be clearly erroneous. *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

Furthermore, this is not a case where the trial court gave an erroneous instruction, *cf. Bollenbach*, 326 U.S. at 607, or completely failed to instruct the jury on the presumption of innocence, *cf. Taylor v. Kentucky*, 436 U.S. 478, 490 (1978) (holding that "the trial court's

refusal to give petitioner's requested instruction on the presumption of innocence resulted in a violation of his right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment"). The trial court stated in its preliminary jury instructions and in its final charge to the jury that the prosecutor carried the burden of proving each element of the crime beyond a reasonable doubt and that the defendant was not required to prove his innocence or to do anything. (Tr. June 1, 1999, at 81; Tr. June 3, 1999, at 652.) The trial court also instructed the jurors three times, including when it gave the supplemental instructions, that the jurors must consider all the jury instructions as a whole. (Tr. June 1, 1999, at 87; June 3, 1999, at 651-52 and 670-71.) Jurors are presumed to follow their instructions and to understand a judge's answer to their questions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and *Armstrong v. Toler*, 24 U.S. 258 (1826)).

The deliberating jurors apparently understood the prosecutor's burden of proof and the fact that Petitioner was not required to prove his innocence, because they acquitted Petitioner of one count of first-degree criminal sexual conduct. (Tr. June 3, 1999, at 676.) And they reached their verdict two hours after the trial court read the supplemental jury instructions. During those two hours, they most likely were doing what they were instructed to do: consulting with each other and trying to reach agreement on the verdict. *Cf. Weeks*, 528 U.S. at 235. If the jurors were still confused after the trial court responded to their question, they probably would have asked additional questions. The Court presumes in the absence of any additional questions that they had no concerns regarding the burden of proof or the presumption of innocence. *Cf. Armstrong*, 24 U.S. at 279 ("Had the jury desired further information, they might, and probably would, have signified their desire to the court. The utmost willingness was manifested to gratify

them, and it may fairly be presumed that they had nothing further to ask.")

The Court concludes that the trial court's failure to re-read the jury instruction on the

burden of proof and the presumption of innocence did not deprive Petitioner of his right to due

process. The state appellate court's decision, therefore, was not contrary to, or an unreasonable

application of, Supreme Court precedent.

### C. Rebuttal Evidence

The third and final habeas claim alleges that the trial court erred by admitting rebuttal

testimony that Petitioner was charged in another criminal case with touching a nine-year-old

boy's penis. The trial court initially denied the prosecutor's request to present the evidence

because, in its opinion, the probative value of the evidence was outweighed by the danger of

unfair prejudice. Petitioner subsequently testified on direct examination by his attorney that it

was not his nature to have sex with children. The prosecutor then renewed her motion to admit

evidence of other child sexual abuse. The trial court granted the prosecutor's request after

concluding from Petitioner's testimony that there was no unfair prejudice in admitting a rebuttal

witness's testimony. (Tr. June 3, 1999, at 567-79).

The Michigan Court of Appeals stated on review of Petitioner's claim that the trial court

did not abuse its discretion in admitting the evidence to establish a common scheme, plan, or

system to sexually abuse young children. The court of appeals agreed with the trial court that the

probative value of the evidence outweighed the danger of unfair prejudice, given Petitioner's

claim that the complainants' mother ordered them to fabricate the charges against Petitioner for

revenge.

### 1. "Other Acts" Evidence

15

The Supreme Court has addressed "prior acts" testimony in the context of the Federal

Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997), and  *Huddleston v.*

*United States*, 485 U.S. 681 (1988), but "it has not explicitly addressed the issue in constitutional

terms." *Bugh*, 329 F.3d at 513.  Because there is no Supreme Court decision holding that a state

violates due process by admitting "other bad acts" evidence, the state court's decision cannot be

deemed "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d)(1).  *Id*. at 512-13.

### 2.  State Evidentiary Errors

Furthermore, as previously explained, "[t]rial court errors in state procedure and/or

evidentiary law do not rise to the level of federal constitutional claims warranting relief in a

habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the

petitioner of due process under the Fourteenth Amendment."  *McAdoo*, 365 F.3d at 494.  The

decision to admit "other acts" evidence was not fundamentally unfair, because Petitioner placed

the issue in dispute when he stated that it was not his nature to have sex with children.

Furthermore, he denied committing the act with the nine-year-old boy, and he explained that the

prosecutor dropped the charges before the case went to trial.  (Tr. June 3, 1999, at 583, 592-93.)

Although the nine-year-old boy subsequently testified that, on one occasion, Petitioner

took a bath with him and touched his private parts, defense counsel elicited testimony that the

child had told a police officer that he sometimes did not tell the truth.  Defense counsel also

elicited testimony that the child was angry with Petitioner at the time because Petitioner had

informed his mother that he was not doing his homework.  (*Id*. at 599, 601-05, 607.)

The trial court, moreover, twice warned the jurors not to use the rebuttal testimony to

conclude that Petitioner was a bad person or was likely to commit crimes or because they

thought that he was guilty of other bad conduct.  The trial court stated that the jurors could

consider only whether the evidence tended to show that Petitioner used a plan or scheme in the

pending case.  (*Id.* at 608-09, 659-60.)

Petitioner was not deprived of due process by the admission of "other acts."  Therefore,

his claim does not rise to the level of a federal constitutional claim and is not cognizable here.  In

addition, the state court's decision was not contrary to, or an unreasonable application of,

Supreme Court precedent.

## IV.  Conclusion

Petitioner's claims do not warrant habeas corpus relief.  Accordingly, the habeas petition

[Doc. #5, Dec. 7, 2004] is **DENIED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: June 8, 2006